Bobbie Lou **STEENBERGEN, Appellant,**

v.

**FIRST FEDERAL SAVINGS AND LOAN OF CHICKASHA, et al., Appellees.**

No. 63166.

Supreme Court of Oklahoma.

Dec. 8, 1987.

Rehearing Denied March 8, 1988.

---

7. Supra, note 2.

9. 15 O.S.1981 §§ 812 (A)(2) and (4).

Michael A. Taylor, Bloodworth & Associates, Oklahoma City, for appellant.

F. Thomas Cordell, Jr., Chickasha, for appellees.

SUMMERS, Justice.

Plaintiff/appellant Bobbie Steenbergen had two accounts with the defendant/appellee First Federal Savings and Loan of Chickasha. The first was a passbook savings account opened with $500.00 in the names of Renee Steenbergen (her daughter) or Bobbie Steenbergen. The second was a certificate of deposit for $7500.00 in the names of Bobbie Steenbergen or Velma Hooker. All funds were the inheritance of Bobbie Steenbergen and hers was the only authorized signature on both accounts.

On October 27, 1980 Bobbie went to First Federal and announced that she wished to close out both accounts. She was given a check for $8844.27 representing the balance in both accounts, which she presumed to be a cashier's check. That check was made payable to the order of Renee Steenbergen or Bobbie Steenbergen. Bobbie put the check in her lockbox. In reality the instrument was not a cashier's check, but rather a check drawn on an account First Federal had at a Topeka, Kansas lending institution.

In November 1981 First Federal issued a stop payment order on the 13 month old check. The following month it issued a second check in the same amount, again payable to Renee or Bobbie, and called Renee to come in and pick it up. The daughter obliged and cashed it for her own benefit. None of the events described in this paragraph were known to Bobbie until

January 1982, when she deposited the check to purchase a new CD. Only then did she learn that payment on her check had been stopped, that a second check had been issued, and that it had been delivered to Renee, who at the time was taking her father's side in a bitter divorce battle.

In Bobbie's lawsuit against Renee and First Federal all parties filed motions for summary judgment once discovery was completed. The trial court sustained First Federal's motion and Bobbie now appeals.

We reverse.

■ The trial court held, as do we, that First Federal was justified in issuing the stop payment order on its stale check. 12A O.S.1981 § 4–403. A "customer" so entitled to stop payment includes a bank carrying an account with another bank. 12A O.S.1981 § 4–104(1)(e).

The trial court held that in paying the proceeds of the two accounts to one of the payees named on the first check First Federal could incur no additional liability. It is here that we disagree.

Although not raised defensively by First Federal we note a threshold question that needs to be first addressed. Bobbie's suit sounds in conversion. Deposits such as hers in savings and loan or banking institutions establish debtor-creditor relationships. *State Guaranty Bank of Okeene v. Doerfler,* 99 Okl. 258, 226 P. 1054 (1924). The general rule is that an action for conversion of funds will not lie for a general debt. *Wright v. School District No. 97,* 36 Okl. 294, 128 P. 241 (1912). It has been held, however, that once an account matures, a bank's withholding of a check representing specifically identified and designated sums belonging to the depositor, and its use of the check in an unauthorized manner, does constitute conversion. *Owens v. Andrews Bank and Trust Co.,* 265 S.C. 490, 220 S.E.2d 116 (1975). The parties having contracted to play the hand in conversion, we are thus free to leave them in that suit.

■ Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein. *White v. Webber/Walkman Co.,* 591 P.2d 348 (Okl.1979) It is not necessary to constitute a conversion that the property come into the defendant's possession wrongfully. *Federal National Bank of Shawnee v. Lindsey,* 172 Okl. 30, 43 P.2d 1036 (1935). Nor is it necessary that the alleged converter apply the property to his own use, *U.S. Zinc Co. v. Colburn,* 124 Okl. 249, 255 P. 688 (1927), or be in bad faith. *Stack v. Gudgel,* 60 Okl. 32, 158 P. 1144 (1916).

■ To maintain her action for conversion Bobbie must establish that First Federal wrongfully interfered with her funds as represented by the check, depriving her of the use of such funds. See *Davidson v. First State Bank,* 559 P.2d 1228 (Okl.1976). All parties agree there are no material facts in controversy.

The following uncontested facts compel us to reach a result opposite that reached by the trial court:

1. Bobbie was the sole signatory on each account.
2. As signatory she was the one who appeared in person to close out the accounts.
3. The first check for all the proceeds was delivered to her.
4. When the Savings and Loan reissued the check it called in the other payee, Renee.
5. Renee's name had never been on the CD, which represented over 93% of the funds on deposit and delivered to Renee.
6. Renee, a minor at this time, knew nothing about the check nor the accounts it represented.
7. Renee appeared before the loan officer with her father, who was known by the loan officer to have been in a contested divorce with Bobbie.
8. The loan officer had been told that the first check had been delivered to an older woman.
9. The defendant delivered the second check to Renee without notifying Bobbie.

If there be no substantial controversy as to any material fact the court shall render judgment for the party so entitled as a matter of law. Rule 13(e), Rules for the District Courts of Oklahoma.

Our conclusion is that in this fact-specific situation the above acts of the defendant amounted to such a mishandling of the check to which Bobbie was entitled as to constitute a wrongful interference with her property. She is thus entitled to judgment as a matter of law. The judgment of the trial court is reversed and the cause remanded with instructions to enter judgment in the sum of $8844.27, plus interest as provided by law, in favor of the plaintiff and against the defendant First Federal Savings and Loan Association of Chickasha.

HARGRAVE, V.C.J., and LAVENDER, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

OPALA, J., concurs in judgment.

DOOLIN, C.J., and SIMMS, J., dissent.

HODGES, J., not participating.

SIMMS, Justice, dissenting:

I respectfully dissent. To maintain an action for conversion the appellant must prove an unlawful or wrongful act of dominion over the property of another. *Davidson v. First State Bank and Trust Co. of Yale*, Okl., 559 P.2d 1228 (1976).

A check is a draft drawn on a bank and payable on demand. 12A O.S.1981, § 3–104(2)(b). The check issued to the appellant's daughter carried an unconditional promise or order to pay a sum certain in money and no other promise. 12A O.S. 1981, § 3–104(1)(b). This sum of money must be paid to the payee or payees named on the face of the check. The appellant was aware that the check had both hers and her daughters name on it. She was also aware that the check itself instructed the bank to pay either of the payee's by including the word *or* between the names. An instrument payable to the order of two or more persons, made payable in the alternative, is payable to any one of them and may be negotiated, discharged or enforced by any of them who has possession of it. 12A O.S.1981, § 3–116(a). Appellant knew or should have known that she was in possession of a bank check, not a certified check, and that the check was payable to either of the named payee's. An instrument is converted when any person to whom it is delivered for payment refuses on demand either to pay or to return it. 12A O.S.1981, § 3–419(1)(b). In this case the check was presented by a named payee and the appellee paid the face value on demand. The appellee acted within the powers granted it by statute and therefore their acts did not constitute an unlawful or wrongful conversion of the appellants property.[1]

Appellant further argues that the appellee breached the contract that was created when she signed the signature card for the savings accounts at the appellee's bank. The appellee could be held liable had they released any funds from these accounts to an unauthorized person. However, the appellant relieved the bank from any obligation under this contract when she voluntarily closed these accounts. At the time she closed the accounts a contract no longer existed and the terms of the check became controlling.

I would affirm the judgment of the trial court.

I am authorized to state that Chief Justice DOOLIN joins in the views expressed herein.

1. Title 6, O.S.1981, § 901 provides: "When a deposit has been made or shall hereafter be made in any bank in the names of two or more persons, payable to any of them or payable to any of them or the survivor, such deposit, or any part thereof, or interest thereon, may be paid to either of said persons, whether one of such persons shall be a minor or not, and whether the other be living or not; and the receipt or acquittance of the person so paid shall be valid and sufficient release and discharge to the bank for any payment so made ..."